**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| MAXELL, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-CV-92-RWS |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| and SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

## FINAL JURY INSTRUCTIONS

### 1.    Introduction

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so. My preference is that you listen carefully while I give them to you orally, understanding you'll have your own written copy to review when you get to the jury room.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts

of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

## 2.      No Inference from Filing Suit

The fact that a plaintiff brought a lawsuit and is in court seeking damages creates no inference that the plaintiff is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## 3.      No Bias

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

4. **Kinds of Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, stipulations of the parties, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from all the evidence, both direct and circumstantial.

5. **Stipulated Facts**

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proven. These facts are not in dispute between the parties.

6. **Considering Witness Testimony**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

## 7.    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

## 8.    Deposition Testimony

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read and/or shown

to you during this trial. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**9.    Summary of Contentions**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Maxell seeks damages from Samsung for allegedly infringing the three asserted patents. Maxell contends that Samsung has made, used, sold, or offered for sale in the United States certain Samsung products that infringe at least one of the following asserted patent claims:

Claim 1 of the '086 patent;

Claims 11 and 12 of the '848 patent; and

Claims 1, 21, and 24 of the '815 patent.

Maxell also contends that Samsung's infringement has been willful.

Samsung denies that it has infringed the asserted claims of the asserted patents and argues that, in addition, the asserted claims of the '815 and '086 patents are invalid. Samsung also denies that there has been any willful infringement.

Maxell denies that the asserted claims are invalid.

Your job is to decide whether Samsung has infringed the asserted claims of the asserted patents and whether any of the asserted claims of the asserted patents are invalid. If you decide that any claim of the asserted patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Maxell to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any

infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

For purposes of this case, the parties agree that, for each of the asserted patents, certain products are representative of other products. That means that proof of infringement or non-infringement of a representative product shall be treated as proof for all the products that it represents. The identification of the representative products, and the products each are representative of, are provided on a patent-by-patent basis in the binders that I separately provided to you.

## 10.     Burdens of Proof

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

Maxell must prove its contention that the asserted claims of the asserted patents have been infringed by Samsung and that the infringement has been willful. To prove infringement of any claim, Maxell has the burden of proving infringement by a preponderance of the evidence. That means Maxell must persuade you that it is more likely than not that Samsung has infringed that claim. To persuade you that any infringement was willful, Maxell must also prove that it is more likely than not that the infringement was willful. Maxell also has the burden of proving damages for any patent infringement by a preponderance of the evidence.

Samsung must prove its contention that the asserted claims of the asserted patents are invalid. Samsung has the burden of proving invalidity by clear and convincing evidence. That means Samsung must present you with evidence that leaves you with a clear conviction that invalidity has been proven.

**11.      Patent Claims and Claim Construction**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other

words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms in Appendix A to these instructions. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

## 12.    Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 1 of the '086 patent and claims 1 and 21 of the '815 patent, are each independent claims.

The remainder of the asserted claims in the asserted patents (claims 11 and 12 of the '848 patent and claim 24 of the '815 patent) are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

## 13.    Infringement

Any person or business entity who makes, uses, sells, offers to sell, or imports into the United States a product that is covered by at least one claim of a patent infringes the patent. A patent owner has the right to stop others from making, using, selling and offering for sale, and importing into the United States the invention covered by the patent claims during the life of the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted claims, as I have construed each of them, to the accused products, and determine whether or not there is infringement.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether Maxell has proven that Samsung has infringed one or more of the Asserted Claims by a preponderance of the evidence.

14.    **Direct Infringement by "Literal Infringement"**

I first will instruct you on the specific rules you must follow to determine whether Maxell has proven that Samsung has directly infringed one or more of the patent claims involved in this case.

A patent can be directly infringed even if the alleged direct infringer did not know of the patent and without the direct infringer knowing that what it did was infringement of the claim.

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct infringement by literal infringement, Maxell must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Samsung made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of Maxell during the time the asserted patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

An Accused Product infringes a claim if it satisfies each of the claim requirements, even though it may also contain additional features or elements not required by the claim.

### 15.    Willful Infringement

In this case, Maxell argues that Samsung willfully infringed Maxell's patents. If you have decided that Samsung has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Maxell proved that it is more likely than not that Samsung knew of Maxell's patent and that the infringement by Samsung was intentional. You may not determine that the infringement was willful just because Samsung was aware of the patent or its corresponding patent application and infringed it. Instead, you must also find that Samsung deliberately infringed the patent.

To determine whether Samsung acted willfully, consider all facts and assess Samsung's knowledge at the time of the alleged conduct. Facts that may be considered include, but are not limited, to:

1.    Whether or not Samsung acted consistently with the standards of behavior for its industry;

2.    Whether or not Samsung intentionally copied a product of Maxell that is covered by the patent;

3.    Whether or not Samsung reasonably believed it did not infringe or that the patent was invalid;

4.    Whether or not Samsung made a good-faith effort to avoid infringing, for example, whether Samsung attempted to design around the patent; and

5.    Whether or not Samsung tried to cover up its infringement.

### 16.    Invalidity

I will now instruct you on the rules you must follow in deciding whether or not Samsung has proven that the asserted claims are invalid. The law presumes that the patent claims are valid. To prove that any claim of a patent is invalid, Samsung must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

17.    **Prior Art**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether asserted claims of the asserted patents are obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

For its obviousness invalidity defenses, Samsung contends that the following is prior art to the following patent:

'815 patent:

- Samsung Galaxy S10: running a Netflix application from before 2020

- Apple iPhone 8

You must determine whether the items and references identified by Samsung are prior art that can be considered in determining whether asserted claims of the '815 patent are obvious.

For the '815 patent, something is prior art if it:

- Was known to or used by others in the United States or patented or described in a printed publication anywhere in the world before the invention date.

- Was already patented or described in a printed publication anywhere in the world, more than one year before the effective filing date of the application for the asserted patent.

- Was publicly used, sold, or offered for sale in the United States more than one year before the effective filing date of the application for the asserted patent.

- Was made by another person in the United States before the invention was made by the named inventor of the asserted patent and the other person did not abandon, suppress, or conceal the invention.

**18.    IPR Proceedings**

You have heard testimony in this case regarding Samsung's petitions for *inter partes* review, or IPRs, of the patents at issue. Specifically, you have heard that the United States Patent and Trademark Office ("PTO") has instituted IPR proceedings and some details about the institution decisions. This evidence was admitted for a limited purpose, and it is important that you understand how you may and may not use this information in your deliberations.

First, you may consider the evidence regarding the IPR proceedings only when you are deciding the question of willfulness. The fact that Samsung filed IPR petitions and that the PTO instituted review may be relevant to Samsung's state of mind.

Second, the IPR proceedings and the PTO's decisions to institute those proceedings are not issues for you to decide in this case. You are not to consider the existence of the IPRs, the fact that they were instituted, or any details of the institution decisions when you are determining whether Samsung has infringed the patents or whether the patents are valid or invalid. Those questions must be decided solely on the evidence and the law as I instruct you, without regard to the IPR proceedings.

You must follow these instructions carefully and consider the IPR evidence only for the limited purpose I have described.

**19.    Obviousness**

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Samsung may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the invention.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as:

1.     Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions.

2.     Whether the claimed invention provides an obvious solution to a known problem in the relevant field.

3.     Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention.

4.     Whether the prior art teaches away from combining elements in the claimed invention.

5.     Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious. The only secondary consideration that Maxell contends applies here is: Whether others sought or obtained rights to the patent from the patent holder.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

## 20.    Level of Ordinary Skill

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention, or the art. In deciding what the level of ordinary skill in the field of the invention is for each patent, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

## 21.    Obviousness: Scope and Content of the Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art that was presented in this case.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill would have considered when trying to solve the problem that is addressed by the invention.

Where Samsung is relying on prior art that was not considered by the Patent Office during examination, you may consider whether that prior art is significantly different and more relevant

than the prior art that the Patent Office did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

## 22.    Written Description Requirement

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date. Samsung contends that the asserted claims of the '086 and '815 patents are invalid because the specification of the patent does not contain an adequate written description of the invention. To succeed, Samsung must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of the patent would not have recognized that it describes the full scope of the invention as it is finally claimed in the patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require

either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

## 23.    Damages

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. If you find that Samsung infringed any valid claim of the asserted patents, you must then determine the amount of money damages, if any, to be awarded to Maxell to compensate it for that infringement. If you find that Samsung has not infringed any valid claim of the Asserted Patents, then Maxell is not entitled to any damages.

If you award damages, they must be adequate to compensate Maxell for any infringement you find. You must not award Maxell more damages than are adequate to compensate for the infringement, nor should you include any additional amount for the purpose of punishing Samsung. Damages are not meant to punish an infringer or set an example. Your damages award, if you reach this issue, should put Maxell in approximately the financial position that it would have been in had the infringement not occurred.

Maxell has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Maxell establishes that it more likely than not suffered. While Maxell is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

Maxell seeks patent damages in the form of a reasonable royalty. You must be careful to ensure that the award is no more or no less than the value of the patented invention.

**24.    Reasonable Royalty Definition**

A reasonable royalty is defined as the amount of money that the patent owner and Samsung would have agreed in a hypothetical negotiation taking place at the time when infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and Samsung would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed that the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

**25.    Lump Sum Versus Running Royalty**

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a

lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

**26.    Damages – Reasonable Royalty Factors**

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner at the time and the alleged infringer would consider in setting the amount the alleged infringer should pay. Here are a list of factors you may consider, although not every factor may be helpful to you.

1. The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

2. The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9.      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion and testimony of qualified experts.

15.     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty that Samsung would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent businesspeople.

## 27.    Damages – Comparable Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. Comparable license agreements are one factor that may inform your decision as to

the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and accused infringer in order for you to consider it. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The terms of a proposed (but unaccepted) license may have some value for determining a reasonable royalty in certain situations, but their evidentiary value can be limited if it is an unrealistic offer that does not represent a reasonable royalty to which both parties would have agreed in a hypothetical negotiation.

## 28.    Damages – Apportionment for Royalty

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Samsung's size or market position, though the volume of Samsung's infringing sales may be considered. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**29.    Commencement of Damages – Actual Notice**

In determining the amount of damages, you must determine when the damages began. Damages for each asserted patent commence on the date that Samsung has both infringed and has received "actual notice", of the alleged infringement of that asserted patent.

You must determine the date that Samsung received "actual notice" of each asserted patent and of the specific product alleged to infringe. Actual notice is determined separately for each asserted patent. Actual notice means that Maxell communicated to Samsung Maxell's belief that a specific Samsung product or device infringes a specific patent asserted by Maxell in this case. The filing of the complaint in this case qualifies as actual notice, so the damages period begins no later than the date the complaint was filed. However, Maxell claims to have provided actual notice prior to the filing of the complaint, including through correspondence Maxell asserts was sent on July 7, 2021. Maxell has the burden of establishing, separately for each asserted patent, that it is more probable than not Samsung received actual notice of infringement for that patent prior to filing the complaint and, if so, on what date.

**30.    Instructions for Deliberations**

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember that in a very real way you are the judges of the facts. Your only interest is to seek the truth from the evidence in the case. All persons, including corporations, both foreign and domestic, stand equal before the law, regardless of size or who owns them or where they are located, and they are to be treated as equals.

Your verdict must be unanimous. When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial. A verdict form has been prepared for you. After you have reached your verdict, your Foreperson is to fill in on the verdict form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I

will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

**Appendix A**
**Court's Claim Constructions**

| Disputed Term | The Court's Construction |
|---|---|
| "character" <br> ('815 patent, claims 1 and 21) | "a letter, number, punctuation mark, or other symbol or control code that is represented to a computer by one unit of information" |
| "receiving . . . first video information . . . including second video information that is encrypted" <br> ('815 patent, claim 21) | "the second video information is in encrypted form at the time it is received" |
| "being deleted from the first group of video information" <br> ('815 patent, claim 1) | "being removed from the first group of video information" |
| "the first group of user information being configured to allow a user to edit" <br> ('815 patent, claim 1) | the composition of the first group of video information being editable by a user. |
| "user profile" <br> ('815 patent, claims 1 and 21) | "a collection of settings and information associated with a user" |
| "first information necessary for an identification of the user" and "second information relating to the identification of the user" <br> ('086 patent, claim 1) | Plain and ordinary meaning |