PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| MAXELL, LTD., | |
| *Plaintiff*, | Case No. 5:23-cv-00092-RWS |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC., | PUBLIC VERSION |
| *Defendants*. | |

**PLAINTIFF MAXELL, LTD.'S POST-TRIAL MOTIONS FOR ENTRY OF JUDGMENT, ENHANCED DAMAGES, PRE-JUDGMENT INTEREST, POST-JUDGMENT INTEREST, AND A PERMANENT INJUNCTION**

PUBLIC VERSION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) .............................................................25

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
    876 F.3d 1350 (Fed. Cir. 2017)................................................................2

*Alfred E. Mann Found. for Sci. Res. v. Cochlear Corp.*, No. CV-07-8108-FMO-
    SHx, 2018 WL 6190604 (C.D. Cal. Nov. 4, 2018), *aff'd* 798 Fed. Appx. 643
    (Fed. Cir. Mar. 16, 2020) .............................................................15, 18

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633 (Fed. Cir. 2015) .............................................................20

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988)............................................................12

*Blitzsafe Texas, LLC v. Volkswagen Grp. Of Am., Inc.*,
    No. 2:15-cv-1274, 2016 WL 4778699 (E.D. Tex. Aug. 19, 2016)...........................8

*Broadcom Corp. v. Qualcomm Inc.*,
    No. SACV 05-467-JVS, 2007 WL 2326838 (C.D. Cal. Aug. 10, 2007),
    *vacated on other grounds*, 2007 WL 8030058 (C.D. Cal. Nov. 21, 2007)...........................14

*Commonwealth Sci. and Indus. Rsch. Org. v. Buffalo Tech. Inc.*
    492 F. Supp. 2d (E.D. Tex. 2007), *rev'd on other grounds by*, 542 F.3d 1363
    (Fed. Cir. 2008) ...............................................................20, 22-23, 26-28

*Contour IP Holding, LLC v. GoPro, Inc.*,
    No. 17-04738, 2021 WL 75666 (N.D. Cal. Jan. 8, 2021).........................................9

*Creative Internet Advert. Corp. v. Yahoo! Inc.*,
    689 F. Supp. 2d 858 (E.D. Tex. 2010) .............................................................17

*Dawson Chem. Co. v. Rohm & Haas Co.*,
    448 U.S. 176 (1980) .............................................................26

*EagleView Techs., Inc. v. Xactware Solutions, Inc.*,
    485 F.Supp.3d 505 (D. N.J. 2020) .............................................................9

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .............................................................*passim*

1

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
    No. 6:11-cv-00201, 2018 WL 1156284 (E.D. Tex., Mar. 5, 2018) .............................12, 14, 17

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012).................................................................................................18

*General Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983).................................................................................................................18

*Georgetown Rail Equip. Co. v. Holland L.P.*,
    867 F.3d 1229 (Fed. Cir. 2017)...........................................................................................2, 17

*Georgetown Rail Equip. Co. v. Holland LP*,
    Cause No. 6:13-cv-366, 2016 WL 3346084 (E.D. Tex. June 16, 2016)
    (Schroeder, J.) .................................................................................................................2, 14, 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016)...................................................................................................................1, 3

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed.Cir.2010), *aff'd*, 564 U.S. 91 (2011) ...........................................20, 24, 28

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
    203 F.Supp.3d 755 (E.D. Tex. 2016) ..................................................................................12, 14

*Internet Machs. LLC v. Alienware Corp.*,
    2013 U.S. Dist. LEXIS 115723 (E.D. Tex. June 19, 2013)....................................................19

*Kolcraft Enters., Inc. v. Chicco USA, Inc.*,
    No. 09-c-03339, 2018 WL 3329706 (N.D. Ill. July 6, 2018) .................................................12

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
    127 F.Supp.3d 1071 (N.D. Cal. 2015) ......................................................................................6

*Pavo Sols. LLC v. Kingston Tech. Co.*,
    No. 8:14-cv-01352, 2021 U.S. Dist. LEXIS 139185 (C.D. Cal. Feb. 16, 2021) ....................12

*Polara Eng'g Inc v. Campbell Co.*,
    894 F.3d 1339 (Fed. Cir. 2018)..............................................................................................2, 3

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351, 1363 (Fed. Cir. 2012) ....................................................................................25

*Read Corp. v. Portec Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)...................................................................................... *passim*

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997)..................................................................................................2

AMECURRENT 1750543637.6 14-Jul-25 17:57

*Stickle v. Heublein, Inc.*,
   716 F.2d 1550 (Fed. Cir. 1983) ........................................................................3

*Tinnus Enters., LLC v. Telebrands Corp.*,
   369 F. Supp. 3d 704 (E.D. Tex. 2019) ..........................................................14, 18

*VirnetX Inc. v. Apple Inc.*,
   324 F. Supp. 3d 836 (E.D. Tex. 2017) (Schroeder, J) .......................2, 3, 10, 16, 18

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) .......................................................................3, 11

*Whirlpool Corp. v. TST Water, LLC*,
   No. 2:15-CV-01528-JRG, 2018 U.S. Dist. LEXIS 52833 (E.D. Tex. March
   29, 2018) ..........................................................................................................13

*ZitoVault, LLC v. Int'l Bus. Machines Corp.*,
   No. 3:16-CV-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) ....................8

**Statutes**

28 U.S.C. § 1961 .................................................................................................1, 19

35 U.S.C. § 283 ..................................................................................................1, 20

35 U.S.C. § 284 ..................................................................................................1, 18

# TABLE OF CONTENTS

**Page**

I.     REQUEST FOR ENTRY OF JUDGMENT ........................................................ 1

II.    REQUEST FOR ENHANCED DAMAGES ..................................................... 1

    A.    Legal Standard ...................................................................................... 1

    B.    Substantial Evidence Supports The Jury's Verdict Of Willful Infringement ......... 3

    C.    Enhanced Damages Are Appropriate ..................................................... 9

        1.    *Factor 1:  Whether Samsung copied the ideas of another.* ......................... 9

        2.    *Factor 2:  Samsung's good faith investigation of the merits of the case.* .. 10

        3.    *Factor 3:  Samsung's litigation behavior.* .................................................. 12

        4.    *Factor 4:  Samsung's size and financial condition.* .................................. 12

        5.    *Factor 5:  The closeness of the case.* .......................................................... 13

        6.    *Factor 6:  The duration of Samsung's misconduct.* .................................. 14

        7.    *Factor 7:  Samsung's lack of remedial action.* ......................................... 15

        8.    *Factor 8:  Samsung's motivation for harm.* .............................................. 16

        9.    *Factor 9:  Samsung's attempts to conceal its conduct.* ............................ 17

III.    REQUEST FOR PRE- AND POST-JUDGMENT INTEREST ...................................... 18

    **A.**    Pre-Judgment Interest ......................................................................... 18

    **B.**    Post-Judgment Interest ........................................................................ 19

IV.    REQUEST FOR A PERMANENT INJUNCTION ........................................................ 19

    A.    Maxell Will Suffer Irreparable Injury ................................................. 21

        1.    *Continued infringement will harm Maxell's research and development activities.* ................................................................................................ 21

        2.    *The injury to Maxell would be irreparable.* .............................................. 22

        3.    *The US SOI further supports a finding that Maxell will suffer irreparable harm.* ........................................................................................ 23

    B.    Maxell Has No Adequate Remedy At Law. .......................................... 26

    C.    The Balance of Hardships Tips In Maxell's Favor. ................................ 27

**TABLE OF CONTENTS**
(continued)

D.    The Public Interest Be Furthered By a Permanent Injunction. ............................ 28

V.    CONCLUSION.................................................................................................................. 28

PUBLIC VERSION

Pursuant to the Post-Trial Briefing Schedule (Dkt. No. 372), Plaintiff Maxell, Ltd., ("Maxell") respectfully moves the Court for entry of judgment, enhanced damages, pre-judgment interest, post-judgment interest, and a permanent injunction.[1]

## I.     REQUEST FOR ENTRY OF JUDGMENT

Maxell respectfully requests entry of judgment pursuant to its post-trial motions and the jury's verdict on May 28, 2025. Upon entry of such judgment, Maxell would be entitled to the following relief:

- Jury award of $111,720,099.00 (the sum of $38,095,514.00 for infringement of the '086 Patent, $28,231,094.00 for infringement of the '848 Patent, and $45,393,491.00 for infringement of the '815 Patent) (Dkt. 350 at 5);

- Enhanced damages as determined by the Court as provided for by 35 U.S.C. § 284;

- Pre-judgment interest on the jury's award as provided for by 35 U.S.C. § 284;

- Post-judgment interest on the entire sum entered as final judgment by the Court as provided for by 28 U.S.C. § 1961;

- A permanent injunction as provided for by 35 U.S.C. § 283.

## II.     REQUEST FOR ENHANCED DAMAGES

### A.     Legal Standard

Section 284 of the Patent Act provides that, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.

There is "no precise rule" for determining whether to award enhanced damages, although they are appropriate in "cases typified by willful misconduct." *Halo Elecs. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103, 106 (2016). Indeed, "subjective willfulness alone—*i.e.*, proof that the defendant

---

[1] Although Samsung opposed Maxell's request for entry for judgment, enhanced damages, and permanent injunction outright during the July 11, 2025 meet and confer, Samsung indicated that it would provide Maxell its position on pre/post-judgment interest after reviewing Maxell's brief and the parties could reconvene on those issues.

1

PUBLIC VERSION

acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer,' []—can support an award of enhanced damages." *Arctic Cat Inc. v. Bombardier Recreational Prods.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (citations omitted). That said, the court should "take into account the particular circumstances of each case" and "consider all relevant factors" in deciding whether to award enhanced damages. *Polara Eng'g Inc v. Campbell Co.,* 894 F.3d 1339, 1355 (Fed. Cir. 2018).

This Court has used the factors set out in *Read Corp. v. Portec Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), in determining whether to award enhance damages. *See e.g.*, *VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836, 863-869 (E.D. Tex. 2017) (Schroeder, J); *Georgetown Rail Equip. Co. v. Holland LP,* No. 6:13-cv-366, 2016 WL 3346084, at *17 (E.D. Tex. June 16, 2016) (Schroeder, J.). The *Read* factors, which are not exclusive and not mandatory, include (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. 970 F.2d at 827; *see Polara Eng'g*, 894 F.3d at 1355 (endorsing the optional use of the *Read* factors); *Georgetown Rail Equip. Co. v. Holland L.P.,* 867 F.3d 1229, 1244-45 (Fed. Cir. 2017) (same).

The ultimate decision to enhance damages need not rest on any particular factor, and not all relevant factors must favor enhancement. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1469 (Fed. Cir. 1997). Ultimately, the "touchstone for determining an award of enhanced damages" is the defendant's "egregious infringement behavior." *VirnetX*, 324 F. Supp.

2

3d at 864; *see Read*, 970 F.2d at 826 ("The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances.").

### B.     Substantial Evidence Supports The Jury's Verdict Of Willful Infringement

The jury found that Samsung willfully infringed Maxell's patents. Dkt. 350 (Verdict). That verdict is supported by substantial evidence. *See Polara Eng'g*, 894 F.3d at 1353 ("Willful infringement is a question of fact reviewed for substantial evidence following a jury trial."). Accordingly, this case is "typified by willful misconduct," which makes an award of enhanced damages appropriate. *Halo*, 579 U.S. at 100, 106.

Willful infringement is a subjective inquiry where culpability "is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 579 U.S. at 105. The infringer must have known about the patents at the time of infringement (*see WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016)) and nevertheless "acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts" (*Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed. Cir. 1983)). Willfulness can also be established by reckless conduct—*i.e.*, where the defendant acted "knowing or having reason to know of facts which would lead a reasonable man to realize his action is unreasonably risky." *Halo*, 579 U.S. at 106.

The jury had more than ample basis to find willful infringement here. The record establishes that Samsung (1) knew of the asserted patents well before litigation, (2) knew its conduct presented an unreasonable risk of infringement, and (3) continued to infringe *after* the filing of this lawsuit.

*First*, Samsung has long been aware of Maxell's patent portfolio; indeed, Samsung has had knowledge of these patents for several years preceding this suit. A 32-page letter dated July 7,

PUBLIC VERSION

2021, from Maxell to Samsung made Samsung aware of Maxell's patents, including the asserted patents. PX-20 (July 7, 2021, letter from Maxell to Samsung); *see* Trial Tr., Day 2 at 32:16-33:2, 35:10-38:8 (sealed portion) (Mr. Yamamoto explaining the July 7, 2021 notice letter sent to Samsung). In fact, Mr. Yamamoto testified that Samsung itself had cited the '086 and '848 Patents in some of its own patent applications as far back as 2012 and 2013, respectively. *See* Trial Tr., Day 2 at 33:3-35:9 (sealed portion).

The July 7, 2021 notice letter explained not only the detailed technical work that had been done on the almost 200 patents identified to Samsung but also Maxell's licensing and/or litigation activity with other companies during the 2016-2021 time period, including numerous case citations to prior Maxell infringement actions brought by Maxell:

> As with the TV patents, we encourage you to examine these patents again, considering of course the significant advancements in Samsung smartphones since 2013. We are confident you will agree a nonexclusive license is needed under each of the patents identified. In particular, at least the identified claims in the above chart are believed to be practiced by the identified Samsung products. Further, many of these patents were the subject of various litigations, including, for example, *Maxell, Ltd. v. Huawei Devices USA, Inc., et al.*, C.A. Nos. 5:16-CV-00178-RWS (E.D. Tex.) and 5:18-CV-00033-RWS (E.D. Tex); *Maxell, Ltd. v. ZTE Corp., et al.*, C.A. Nos. 5:16-CV-00179-RWS (E.D. Tex.) and 5:18-CV-00034 (E.D. Tex.); *Maxell, Ltd. v. ASUSTeK Computer, Inc.*, C.A. No. 3:18-CV-01788 (N.D. Cal.); *Maxell, Ltd. v. Blu Products, Inc.*, C.A. No. 1:18-CV-21231 (S.D. Fla.); *Maxell, Ltd. v. Blackberry Corp., et al.*, C.A. No. 1:17-CV-01446 (D. Del.); *Maxell, Ltd. v. Olympus Corp., et al.*, C.A. No. 1:18-CV-00310-JFB-SRF (D.Del.); *Maxell, Ltd. v. Apple Inc.*, C.A. No. 5:19-CV-00036-RWS (E.D. Tex.); *Maxell, Ltd. v. Apple Inc.*, C.A. No. 6:21-CV-00158-ADA (W.D. Tex.); *In the Matter of Certain Mobile Electronic Devices And Laptop Computers*, Inv. No. 337-TA-1215; and numerous foreign proceedings in Germany and Japan. Each of these litigations has now concluded with very favorable results for Maxell. For example, the ZTE litigation resulted in a $43.3 million verdict on seven patents in its portfolio, including U.S. Patent Nos. 6,748,317 ("'317 Patent"); 8,339,493 ("'493 Patent"); 8,736,729 ("'729 Patent"); 6,408,193 ("'193 Patent"); 6,329,794 ("'794 Patent"); and 6,816,491 ("'491 Patent"); and 8,098,695 ("'695 Patent") and the Apple litigation resulted in a settlement shortly after jury selection. In addition to the litigation successes, we also note that numerous patents in Maxell's Smartphone portfolio have been subject to IPR petitions that were not instituted by the PTAB. We encourage you to review these matters. Because Samsung's infringing products operate in substantially the same manner as the products accused of infringement in these case, additional detail regarding Samsung's infringing activities can be gained from reviewing the complaints and allegations in these matters.

*See* PX-20 at PX.0031-32; Trial Tr., Day 2 at 38:9-45:6 (sealed portion);.

4

PUBLIC VERSION

After acknowledging the July 7, 2021 letter, Samsung asked Maxell t█████████████

█████████████████████   ████████████████████████████████████████████

█████████████████████████████████████████████. *See* Trial Tr. Day 2, at

45:7-21, 46:12-49:3 (sealed portion) (Yamamoto testimony); Trial Tr., Day 4 at 840:17-841:9

(unsealed portion) (Kim testimony); PX-21 at PX-21.0002 (████████████████████████

███████████████████████████████████████). Maxell rejected that

request and, after some further correspondence, the parties ███████████████████

███████.

Samsung then sought to delay any further discussions by asking for claim charts. That was

unnecessary, because Maxell had specifically identified its patents as well as many similar

smartphone-related litigations in which it had plainly laid out its theories of infringement. *See* Trial

Tr., Day 2 at 50:15-57:4 (sealed portion); PX-21-25 and PX-29-33 (communications between

Maxell and Samsung regarding ██████ and requests for claim charts). Further, Mr. Yamamoto

explained that, despite not providing Samsung with claim charts, Maxell "provided the information

which is very similar to – or you know, can be findable in the – on the database of the litigations"

including identifying the infringed patent claims and Samsung infringing products. *See* Trial Tr.,

Day 2 at 355:12-362:8, 362:17-371:24 (unsealed portion) (Yamamoto testimony); *see also* Trial

Tr., Day 4 at 846:3-22 (unsealed portion) and Trial Tr., Day 5 at 875:21-876:7 (Mr. Kim of

Samsung confirming that Maxell provided Samsung with claims and products in the July 7, 2021

letter for the '086 Patent).

In any event, the evidence showed that after receiving the July 7, 2021 notice letter,

Samsung did not do anything to investigate its infringement. Mr. Yamamoto testified that if

Samsung had "started [an] evaluation, they should have some question, technical question or some

comments technically," yet Maxell "didn't hear anything from Samsung." Trial Tr., Day 2 at 409:11-410:18 (unsealed portion). That showed that Samsung "didn't do anything during such two years." *See id.*; *see also* 42:11-25 (sealed portion) (Mr. Yamamoto explaining that if Maxell received a letter like the July 7, Maxell would have "start[ed] our analysis by ourselves" but Samsung "didn't do that"); *Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F.Supp.3d 1071, 1074 (N.D. Cal. 2015) (noting a "plausible inference" that, during settlement negotiations, the defendants "either evaluated the patent portfolio of MPS, or were willfully blind in not doing so").

Mr. Kim of Samsung



*See* Trial Tr., Day 4 at 844:15-25 (unsealed portion). Mr. Kim also testified that

. *See id.* at 848:16-852:2.

> *Second*, Samsung had no reasonable basis for believing that its conduct was not infringing. Indeed, after years of discovery, Samsung could identify only a handful of minor limitations which it argued it did not infringe (and the jury rejected all of its arguments):

- For the '086 patent, Samsung's expert focused solely on the combined 1(f)/1(g) element of claim 1, which claimed the first registering mode for inputting input information by a pad of the finger and a second registering mode for inputting input information by an end of the finger. *See* Trial Tr., Day 5 at 895:7-920:12 (unsealed

PUBLIC VERSION

portion) (Dr. Nielson testifying that the accused products did not meet the combined 1(f)/1(g) element of claim 1 of the '086 Patent); *see, e.g.*, DDX-003.6.–.9 (Nielson demonstratives regarding the '086 Patent);

- For the '848 patent, Samsung's expert focused solely on element 8(g) of claim 8, which claimed the first setting mode. *See* Trial Tr., Day 5 at 969:22-970:3, 971:9-996:13 (unsealed portion) and Trial Tr., Day 5 at 8:20-23 (sealed portion) (Dr. Kia testifying that the accused products did not meet a single claim limitation, element 8(g), the "first setting mode" of claim 8 of the '848 Patent for which asserted claims 11 and 12 depend upon); DDX-004.5–.15 (Kia demonstratives regarding the '848 Patent);

- For the '815 patent, Samsung's expert focused solely on elements 1(j) and 1(k) of claim 1 and element 21(f) of claim 21, all of which Samsung focused its argument on the construed "character" claim term. *See* Trial Tr., Day 5 at 1001:5-1008:14, 1009:9-1014:15, 1017:12-1020:22 (unsealed portion) and Trial Tr., Day 5 at 3:6-6:11 (sealed portion) (Dr. Kia testifying that the accused products did not meet elements 1(j) and 1(k) of claim 1 and element 21(f) of claim 21 of the '815 Patent for a single reason—the accused products did not meet the Court's construction of "character"); DDX-004.17–.28 (Kia demonstratives regarding the '815 Patent).

Samsung also did not provide any evidence that it undertook any actions to avoid infringing Maxell's patents, either before or after Maxell commenced suit. It thus is clear that, after learning of its infringement when Maxell sent its notice letter on July 7, 2021, Samsung willfully continued its infringing activities. Moreover, Samsung chose not to present any evidence on non-infringing alternatives. *See* Trial Tr., Day 5 at 1149:21-22 ("we also withdrew non-infringing alternatives").

7

PUBLIC VERSION

There thus is no evidence in the record that Samsung engaged in any actions to avoid Maxell's patents either before or after Maxell sued Samsung, let alone before or after the July 7, 2021 notice letter.

*Third*, Samsung willfully continued its infringement even after Maxell filed this suit despite clear knowledge that it was infringing Maxell's patents. For example, Samsung continued selling smartphones and tablets that had admittedly infringing functionality. This continued sales activity is another basis for finding willfulness. *See ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 29, 2018) ("The Court can reasonably infer that if Defendants infringe, then they are deliberately continuing to do so despite notice in the Complaint."); *Blitzsafe Texas, LLC v. Volkswagen Grp. Of Am., Inc.*, No. 2:15-cv-1274 (Lead Case), 2016 WL 4778699, at *7 (E.D. Tex. Aug. 19, 2016) ("The Court also finds the Complaint states a claim to post-suit willful infringement.").

Samsung's only defense to willfulness was that it had petitioned the Patent Office for institution of *inter parte* reviews (IPRs) for the '086, '848, and '815 Patents. *See, e.g.*, DTX-242-245 (institution decisions for the '086, '848, and '815 Patents); Trial Tr., Day 2 at 381:19-385:6 (unsealed portion) (Mr. Yamamoto discussing DTX-242-245), Trial Tr., Day 4 at 823:12-827:14 (unsealed portion) (Mr. Kim discussing DTX-242-245).

But Samsung filed the IPRs on April 19, 2024 (both petitions for the '815 Patent), April 26, 2024 ('086 Patent), and May 1, 2024 ('848 Patent)—over seven months after being sued, about a year before the jury trial, and almost **three years after** the July 7, 2021 notice letter. So, at a minimum, Samsung presented no evidence of any good faith defense to willful infringement for the almost three-year period between the notice letter and its filing of the IPRs.

In any event, as the Court correctly instructed the jury, the filing of the IPRs did not

8

PUBLIC VERSION

immunize Samsung from a finding of willfulness. The Court instructed the jury that it could consider the IPRs solely to determine willfulness, and that "[t]he fact that Samsung filed IPR petitions and that the PTO instituted review may be relevant to Samsung's state of mind" with respect to willfulness. Trial Tr., Day 6 at 1293:20-1294:21 (unsealed portion) (emphasis added); *see also* Dkt. 333 at 3-5 (Samsung's brief on jury instructions) (*citing Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-04738, 2021 WL 75666, at *8 (N.D. Cal. Jan. 8, 2021) ("IPR evidence is of much more probative value regarding willfulness than it is in other contexts.")). But neither the existence of the IPRs or the instruction foreclosed a finding of willfulness.

The jury considered—and rejected—Samsung's argument about the IPRs in finding that Samsung willfully infringed all three patents. *See* Trial Tr., Day 6 at 1386:8-12 (unsealed portion); Dkt. 350 (Verdict); *see also EagleView Techs., Inc. v. Xactware Solutions, Inc.*, 485 F.Supp.3d 505, 522-526, 532-534 (D. N.J. 2020) (denying defendants' renewed 50(b) motion, or alternatively, motion for a new trial on the issue of willful infringement despite the admission of IPR and reexamination evidence and "no direct evidence of copying" where the defendant was put on notice of infringement and its President testified he never investigated whether defendants were infringing). Accordingly, Samsung cannot rely on the fact that it filed the IPRs to show lack of willful infringement for the period after the filing.

### C. Enhanced Damages Are Appropriate

Since the jury found that Samsung's infringement was willful, this Court may, and should, award enhanced damages based on the strong evidentiary support for the jury's determination. Indeed, enhanced damages plainly are appropriate here: each of the nine *Read* factors either favors enhancement or is neutral.

#### 1. Factor 1: Whether Samsung copied the ideas of another.

The first *Read* factor is whether Samsung copied the ideas of Maxell. *Read*, 970 F.2d at

9

PUBLIC VERSION

827. This factor is neutral because there is no evidence in the record indicating whether or not Samsung copied Maxell's patents. In particular, Samsung did not attempt to demonstrate the absence of copying. *See VirnetX*, 324 F. Supp. 3d at 868-69 ("Courts often find [factors 1 and 8] neutral when there is no evidence of copying or motivation to harm. *See, e.g.*, [collecting cases]. Apple has not shown any behavior on its part relating to these factors that mitigates against an award of enhanced damages. Accordingly, Factors 1 and 8 are neutral.").

2.    *Factor 2:  Samsung's good faith investigation of the merits of the case.*

The second *Read* factor is whether, when Samsung became aware of Maxell's patents, it "investigated the scope of [those] patent[s] and formed a good-faith belief that [they were] invalid or . . . not infringed." *Read*, 970 F.2d at 827.

The second *Read* factor strongly favors enhancement in view of Samsung's long awareness of Maxell's patents and lack of any meaningful analysis prior to Maxell filing suit. As explained above in Section II(B), Maxell sent Samsung a detailed 32-page notice letter identifying the three patents in suit, the infringed claims, and the infringing products. *See* Trial Tr., Day 2 at 32:16-33:2, 35:10-38:8 (sealed portion) (Mr. Yamamoto explaining the July 7, 2021 notice letter sent to Samsung); PX-20 (July 7, 2021, letter from Maxell to Samsung).

Samsung's response was simply to stall. Instead of itself analyzing its own products—products that Samsung designs and sells—all Samsung did was to ask Maxell three times for claims charts. *See* Trial Tr., Day 2 at 45:7-21, 46:12-49:2, 50:15-57:4 (sealed portion); PX-21-25 and PX-29-33.

Critically, Samsung refused to perform any diligence on Maxell's patents, despite Maxell identifying similar litigations from which Samsung could understand Maxell's theories of infringement. *See* Trial Tr., Day 2 at 355:12-362:8, 362:17-371:24 (unsealed portion); *see also* Trial Tr., Day 4 at 846:3-22 (unsealed portion). Indeed, Samsung's corporate representative at

10

PUBLIC VERSION

trial, Mr. Kim, █████████████████████████████████████████████████████

██████████████. *See* Trial Tr., Day 4 at 844:15-25 (unsealed portion). Samsung's ████████

████████ is even more damning as to *Read* factor 2 as it knew that its prior license with Maxell

expired in 2016. PX-20 at PX-20.0001; *see* Trial Tr., Day 2 at 35:9-17 at (sealed portion); Trial

Tr., Day 4 at 818:23-819:18 (unsealed portion). Despite that, Samsung made no effort to determine

whether it needed to renew the license based on updated technology. Maxell initiated this litigation

only after repeated attempts to negotiate a license proved fruitless.

Samsung's non-infringement arguments at trial were limited (one argument per patent) and

weak. *See* Section II(B), *supra.* And merely contesting infringement in some way during litigation

is not enough to satisfy this factor—nearly every case features at least some argument of

noninfringement and an infringer therefore cannot avoid a willfulness award by pointing to

noninfringement arguments. The determinative point here is the total absence of evidence of any

meaningful investigation of patent scope by Samsung.

Certainly, Samsung cannot tip the scales on this *Read* factor by pointing to the institution

of the IPRs alone. Samsung's filing of the IPRs occurred almost three years after receiving the

July 7, 2021, notice letter (and over seven months after Maxell filed its complaint) and there is no

evidence of any meaningful investigation of Maxell's patents by Samsung during this time.

Samsung also voluntarily chose not to present any non-infringing alternatives arguments at trial

and no evidence exists that Samsung ever even attempted to implement any such modifications to

the accused products to avoid infringement of the tried claims. Trial Tr., Day 5 at 1149:21-22 ("we

also withdrew non-infringing alternatives"); *see, e.g.*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317,

1342 (Fed. Cir. 2016) (affirming a grant of enhanced damages of 50% for willful infringement

where defendants had pre-suit knowledge of the patents and defendants' invalidity defenses were

11

PUBLIC VERSION

"created during litigation, years after it began engaging in culpable conduct"); *Kolcraft Enters., Inc. v. Chicco USA, Inc.*, 2018 WL 3329706 at *5 (N.D. Ill. July 6, 2018) (denying defendant's motion for summary judgment of willful infringement and noting that "a jury could also find that [filing a post-lawsuit *inter partes* reexamination and product redesigns] were merely post-hoc litigation strategies to try to avoid enhanced damages").

The bottom line is that Samsung's failure to conduct good-faith investigation or negotiation upon learning of infringement provide strong justification for an award of enhanced damages. *See*, *e.g.*, *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F.Supp.3d 755, 764 (E.D. Tex. 2016) (finding no "serious investigation to form a good-faith belief as to non-infringement or invalidity" in part because defendants attempted to purchase the patents through a broker); *see also Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-cv-00201, 2018 WL 1156284, at *3 (E.D. Tex., Mar. 5, 2018) (finding that an exchange of invalidity charts supports enhanced damages under the second *Read* factor as "evidence of the *absence* of a good-faith pre-suit investigation" because the exchange showed that the defendant "recogniz[ed] that such an investigation was warranted") (emphasis in original). The second *Read* factor therefore supports enhanced damages.

### 3. Factor 3: Samsung's litigation behavior.

The third *Read* factor calls for considering the reasonableness of Samsung's litigation behavior. This factor is neutral here.

### 4. Factor 4: Samsung's size and financial condition.

The fourth *Read* factor is the size of the defendant. Where the defendant is a large corporation, enhanced damages often are appropriate to effectively deter or punish the defendant. *See Read*, 970 F.2d at 827; *see also Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1566 (Fed. Cir. 1988) ("One purpose of an increased damage award is to deter willful patent infringement by punishing the willful infringer."); *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-

12

PUBLIC VERSION

cv-01352, 2021 WL 3116849, at *11 (C.D. Cal. Feb. 16, 2021) ("Punishing a larger company in a

stronger financial condition may call for higher damages.").

"There is no dispute that [Samsung] is a large company with billions in revenue. Thus, this

factor favors enhancement." *Eidos Display,* 2018 WL 1156284, at *5. For example, Mr. Kim

testified that "Samsung is a global IT leader" with "about 20,000 people working in the state of

Texas." Trial Tr., Day 4 at 816:14-817:6 (unsealed portion). Mr. Kim also explained that Samsung

is "engaged in [the] production and selling [of] a variety of products including foldable phones,

Galaxy series call phones, QLED TVs, refrigerators, and washers, and so forth." *Id.* at 817:8-12.

### 5.    *Factor 5:  The closeness of the case.*

The fifth *Read* factor is the closeness of the case. Where the defendant's case was

exceptionally weak, an award of enhanced damages is appropriate. Here, Samsung's case was

exceptionally weak.

The jury found that Samsung willfully infringed every single asserted patent claim, that the

'086 and '815 Patents are not invalid (and Samsung did not even present an invalidity case on the

'848 Patent), and awarded substantial damages to Maxell. *See* Dkt. 350 (Verdict); *see also* Section

II(B) (detailing Samsung's litigation weaknesses); *Whirlpool Corp. v. TST Water, LLC*, No. 2:15-

CV-01528-JRG, 2018 WL 1536874, at *7 (E.D. Tex. March 29, 2018) ("That a defendant's

position on various defenses 'may have required resolution at trial . . . does not dictate that the case

was close.'"). Samsung barely mounted a case of non-infringement; it made only one argument as

to each patent. *See* Section II(B) *supra*.

Further, Maxell's demands going into litigation were reasonable. Maxell simply asked

Samsung to take a patent portfolio license—which had already been agreed to by other entities

such as ███████████████████████ (*see* Trial Tr., Day 2 at 58:22-63:24, 64:23-79:19

(sealed portion) (Mr. Yamamoto testimony)), or else negotiate in good faith, rather than drawing

13

out negotiations and using the threat of litigation costs to extract an unfairly low portfolio rate. The jury clearly did not find Maxell's licensing position to be unreasonable. *See* Dkt. 350 (Verdict).

Instead, Samsung forced Maxell to litigate through an expensive jury trial, making this *Read* factor strongly favor enhancement. *See Georgetown Rail*, 2016 WL 3346084, at *19 ("this was not a close case and given the reasonable relief Georgetown requested, it could have been resolved in a more efficient manner. Accordingly, this factor favors enhancement.").

### 6. *Factor 6: The duration of Samsung's misconduct.*

The sixth *Read* factor is the duration of the defendant's misconduct. Enhanced damages should be awarded when a defendant has long continued to infringe and refused to license the technology.

Samsung continues to infringe today, over four years after Maxell told Samsung about Maxell's patents on July 7, 2021. *See* Trial Tr., Day 2 at 32:16-33:2, 35:10-38:8 (sealed portion) (Mr. Yamamoto explaining the July 7, 2021 notice letter sent to Samsung); PX-20 (July 7, 2021, letter from Maxell to Samsung); *see also* Section II(B) *supra* (noting Samsung's less-than-good faith positions regarding the ███ with regard to willfulness).

Over those four years, the parties held multiple telephone conferences and litigated this case to verdict, and yet Samsung's infringement continues. Courts have repeatedly recognized that such conduct favors enhanced damages. *See Imperium IP*, 203 F. Supp. 3d at 764 (trebling damages when three years passed between notice and lawsuit); *see also Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-467-JVS, 2007 WL 2326838, at *3 (C.D. Cal. Aug. 10, 2007) ("The length of [the infringer's] infringement (approximately two years), coupled with the fact that infringement continued after [the patentee] filed its suit, supports an increase in damages"), *vacated on other grounds*, 2007 WL 8030058 (C.D. Cal. Nov. 21, 2007); *Eidos Display*, 2018 WL

PUBLIC VERSION

1156284, at *6 (finding that infringement "for several years" favored enhancement); *Tinnus Enters. v. Telebrands Corp.*, 369 F. Supp. 3d 704, 723 (E.D. Tex. 2019) (noting cases establishing that "continuing to sell the infringing products after notice of infringement and during the course of litigation supports enhancement" under this factor).

Because Samsung has continued to infringe Maxell's patents for over four years, the sixth *Read* factor also favors enhancement.

### 7.    Factor 7:  Samsung's lack of remedial action.

The seventh *Read* factor assesses whether the defendant took any remedial action. For example, a defendant's failure to search for or implement non-infringing alternatives weighs heavily in favor of enhanced damages. *Alfred E. Mann Found. for Sci. Res. v. Cochlear Corp.*, No. CV-07-8108-FMO-SHx, 2018 WL 6190604 at *25-31, 33 (C.D. Cal. Nov. 4, 2018) (concluding substantial evidence supported a jury's finding of willfulness and granting a motion for enhanced damages that doubled a jury verdict of $130 million based, in part, on "a less desirable, non-infringing alternative [that] was available but Cochlear, despite its massive resources, chose not to use it or develop its own non-infringing alternative," forwarding only post-suit non-infringement defenses despite pre-suit knowledge, size of Cochlear versus plaintiff, a nonprofit medical research company that generates income by licensing its technology), *aff'd* 798 Fed. Appx. 643 (Fed. Cir. Mar. 16, 2020) (Fed. Cir. R. 36 affirmance). Here, Samsung took no remedial action whatever, and this factor therefore heavily favors enhancement.

Prior to trial, during expert discovery, Samsung's technical expert for the '848 and '815 Patents (Dr. Kia) provided opinions that Samsung had ready, non-infringing alternatives available to it for each asserted patent. *See* Ex. 1, Kia '848 Patent Non-infringement Report ¶ 71; Ex. 2, Kia

15

PUBLIC VERSION

'815 Patent Invalidity Report ¶¶ 608-615.[2] For the '848 Patent, Dr. Kia explained in his report that Samsung did not view the removal of the highlight reel functionality (which only affects asserted claim 12, not claim 11) "to be too significant an expenditure of resources." *See* Ex. 1, Kia '848 Patent Non-infringement Report ¶ 71. For the '815 Patent, Dr. Kia opined in his report that the discussed non-infringing alternative "could have been completed with simple source code modifications to the Gallery application that would have taken not more than 100 man-hours to complete, including modifications of the source code and all required testing, verification and distribution tasks." Ex. 2, Kia '815 Patent Invalidity Report ¶ 615.

Despite this, Samsung did not present any evidence that it tried or even considered any non-infringing alternatives. *See* Trial Tr., Day 5 at 1149:21-22 ("we also withdrew non-infringing alternatives"). In fact, there is no evidence that Samsung made any changes to its products in response to Maxell's efforts or in response to Samsung's own clear knowledge that it infringed at least one of Maxell's patents. *See* Section II(B) *supra*.

Instead, Samsung demonstrated plain indifference to Maxell's patent rights. The seventh *Read* factor therefore also favors enhanced damages.

        8.    *Factor 8:  Samsung's motivation for harm.*

The eighth *Read* factor is whether Samsung intended to harm Maxell. This factor often is neutral because usually there is insufficient evidence in the record to demonstrate or refute a specific motivation to harm. *See VirnetX*, 324 F. Supp. 3d at 868-69 ("Courts often find [factors 1 and 8] neutral when there is no evidence of copying or motivation to harm"). Here, this factor is neutral.

---

[2] Dr. Nielson, Samsung's technical expert for the '086 Patent, did not provide any non-infringing alternative opinions in either of his invalidity or non-infringement reports for the '086 Patent.

16

9.     *Factor 9:  Samsung's attempts to conceal its conduct.*

The final *Read* factor is whether Samsung attempted to conceal its infringing activities. Here, this factor is neutral.

\*          \*          \*

Here, five of the nine *Read* factors (2, 4, 5, 6, 7) support enhancing damages, and four factors are neutral (1, 3, 8, 9). That provides very strong grounds for the Court to award enhanced damages.

The Court may enhance damages from 0 to 200%. While courts in this district have issued enhancements that range between 50 and 200%, the heartland of these decisions is between 65% and 100%. For example, in *Georgetown Rail*, this Court found six *Read* factors satisfied and awarded a 65% enhancement. 2016 WL 3346084, at \*21 (enhancement of $1,000,000 on damage award of $1,544,333). Similarly, Judge Love issued a 66% enhancement when five *Read* factors were met. *Creative Internet Advert. Corp. v. Yahoo! Inc.*, 689 F. Supp. 2d 858, 871 (E.D. Tex. 2010). And Judge Gilstrap issued a 100% enhancement when five *Read* factors weighed in favor of enhancement and two against. *Eidos Display*, 2018 WL 1156284, at \*7. This authority confirms that the heartland of enhancement in these circumstances is between 65% and 100%.

The Federal Circuit, for its part, routinely affirms enhancements within this range. *See, e.g.*, *Georgetown Rail Equip.*, 867 F.3d 1229 (affirming this Court's 65% enhancement).

Considering this authority, Maxell respectfully submits that an enhancement between 25% and 50% is appropriate in light of the balance of *Read* factors applied to this case. That accords with and is, in fact, lower than the significant thrust of authority in this District. A 25-50% enhancement recognizes the nature of the jury verdict but balances that verdict with not rewarding willful infringers who inflict large damages and then use that immense harm as a basis for avoiding accountability for willfulness. Instead, courts should deter such conduct by making clear that

17

willfully inflicting substantial harm will result in enhanced damages. *See Alfred E. Mann¸* 2018 WL 6190604 *35 (granting a motion for enhanced damages that doubled a jury verdict and noting that "[w]hile the jury's $130 million verdict is significant and may sound large in the abstract, it may not be enough without enhancement to deter infringing conduct given the context of this case").

## III.    REQUEST FOR PRE- AND POST-JUDGMENT INTEREST

### A.    Pre-Judgment Interest

Upon a "finding for the claimant the court shall award . . . interest . . . as fixed by the court." 35 U.S.C. § 284. "[P]rejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983); *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) ("The award of pre-judgment interest is the rule, not the exception.").

Consistent with "the standard practice of this District," Maxell moves for pre-judgment interest at the prime rate compounded quarterly from the date of first infringement (July 7, 2021) through the date on which the Court enters final judgment. *Tinnus*, 369 F. Supp. 3d at 743-44; *see, e.g.*, Trial Tr., Day 2 at 32:16-33:2, 35:10-38:8 (sealed portion) (Mr. Yamamoto explaining the July 7, 2021 notice letter sent to Samsung); PX-20 (July 7, 2021, letter from Maxell to Samsung); Trial Tr., Day 5 at 875:21-876:7 (Mr. Kim of Samsung confirming that Maxell provided Samsung with claims and products in the July 7, 2021 letter for the '086 Patent).

Because the jury awarded damages as a single sum, pre-judgment interest should be applied to the entire sum awarded as a running royalty from the date of first infringement. *VirnetX*, 324 F. Supp. 3d at 873 ("the Court ORDERS that VirnetX be awarded pre-judgment interest at the prime rate compounded annually, to be applied on the entire jury award beginning at the date of the

hypothetical negotiation"), *aff'd* 748 F. Appx. 332 (Fed. Cir. 2019). Arguments to the contrary have been routinely rejected. *See, e.g.*, *id.*; *Internet Machs. LLC v. Alienware Corp.*, 2013 U.S. Dist. LEXIS 115723, *68-70 (E.D. Tex. June 19, 2013) (finding that the prime interest rate approximates foregone investment opportunity and awarding "prejudgment interest at the prime interest rate in effect as of the date of this order, compounded quarterly. This interest is to be calculated from the date of first infringement through the date of final judgment."). In *Internet Machines*, the Court explained that the prime rate, compounded quarterly, is usually awarded in this District because it reflects the lost investment opportunity that reasonably could have been realized from the time of first infringement, having nothing to do with borrowing. *Id.* Such an award is appropriate here.

During the meet and confer, Samsung indicated that it would provide Maxell's its position after reviewing Maxell's post-trial brief and the parties could further discuss the issue of pre-judgment issue at that time.

## B.    Post-Judgment Interest

Maxell also moves for post-judgment interest at the statutory rate pursuant to 28 U.S.C. § 1961. Post-judgment interest should be applied at the statutory rate to the entire sum entered as final judgment by the Court. *Id.*

Once again, during meet and confer, Samsung indicated that it would provide Maxell with its position after reviewing Maxell's post-trial brief and the parties could further discuss the issue of post-judgment issue at that time.

## IV.    REQUEST FOR A PERMANENT INJUNCTION

Maxell seeks entry of a permanent injunction to enjoin Samsung's continued infringement of the '086, '848, and '815 Patents. To obtain an injunction, the plaintiff must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

19

PUBLIC VERSION

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006); *see i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 861 (Fed.Cir.2010), *aff'd,* 564 U.S. 91 (2011).

That Maxell both received a jury award of damages and does not manufacture products practicing the three patents in suit are immaterial to the injunction inquiry. In *Commonwealth Sci. and Indus. Rsch. Org. v. Buffalo Tech. Inc.*, Judge Davis granted a permanent injunction to a non-practicing patent owner. 492 F. Supp. 2d 600, 607-08 (E.D. Tex. 2007), *rev'd on other grounds by*, 542 F.3d 1363 (Fed. Cir. 2008). And the U.S. Patent and Trademark Office and Department of Justice (Antitrust Division) have filed a statement of interest in another case in this district explaining that a non-practicing entity suffers irreparable harm when its patents are infringed—in that case the plaintiff was seeking preliminary injunctive relief against the very Samsung entities that are defendants in this case. *See* Ex. 3, *Radian Memory Sys. LLC v. Samsung Elecs. Co., Ltd., and Samsung Elecs. Am., Inc.*, Case No. 2:24-cv-01073-JRG, Dkt. 52 (E.D. Texas June 24, 2025) ("US SOI").

As the federal government explained in its SOI, "Congress has authorized injunctions 'in accordance with the principles of equity to prevent the violation of any right secured by patent,' [35] U.S.C. § 283, and '[i]njunctions are vital to [the patent] system' for 'encouraging innovation, *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). Without the possibility of injunctive relief, 'the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined.'" Ex. 3, US SOI at 3.

20

PUBLIC VERSION

Maxell's Complaint sought a permanent injunction for the '086, '848, and '815 Patents and Maxell has never disclaimed that request for the relief that it seeks in its motion herein. *See* Dkt. 1 at ¶ 170.[3]

Maxell satisfies the four-factor *eBay* test and is entitled to a permanent injunction against Samsung's continued infringement.

## A.     Maxell Will Suffer Irreparable Injury.

Without a permanent injunction, Maxell will suffer irreparable harm, in particular substantial, continuing injury to its ongoing licensing and development programs.

### 1.     *Continued infringement will harm Maxell's research and development activities.*

Mr. Yamamoto, general manager of Maxell's IP division, testified that he oversees the creation and filing of patents covering inventions by Maxell engineers, as well as the licensing of those patents. *See* Trial Tr., Day 1 at 262:12-264:21, 269:8-270:6 (unsealed portion); Trial Tr., Day 2 at 335:9-16 (unsealed portion) (agreeing that Maxell files "quite a few patents every year"); *see generally* Trial Tr., Day 2 at 8:3-32:14, 58:22-63:24, 64:23-72:24, 73:9-78:1, 78:3-80:4, 81:9-17 (sealed portion) (Mr. Yamamoto discussing Maxell's licensing practice), PX-419 (Maxell-██ agreement), PX-420 (Maxell-██ agreement), PX-422 (Maxell-██ agreement), PX-451 (Maxell-██ agreement); Trial Tr., Day 4 at 21:8-22:5, 24:9-39:4, 40:15-46:14, 65:18-69:25, 75:4-84:7, 87:2-89:14 (sealed portion) (Mr. Jarosz discussing Maxell's licensing practice); PX-

---

[3] Although Maxell did not list a permanent injunction in its Statement of Contested Issues of Fact and Law (Dkt. 265, Pretrial Order, Section F at ¶¶ 1-33), Samsung itself identified the issue. *See id.* at Section F, ¶ 49 ("Whether Maxell is entitled to a permanent injunction in the event that Samsung is found to infringe any of the Patents-in-Suit."). And the preface to that section states that "The parties identify the following issues of fact that remain to be litigated. The parties do not waive any of their pending or anticipated motions. The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in any motions *in limine*." *See id.* at 35.

PUBLIC VERSION

416 (Maxell-███ agreement). Specifically, Mr. Yamamoto oversees 70 employees at Maxell. Trial Tr., Day 1 at 270:8-9 (unsealed portion).

Among other products, Maxell still has an ongoing battery business, including research and development of innovative battery products, for which it is currently discussing a battery supply agreement with ███ *See* Trial Tr., Day 1 at 266:4-8, 267:5-16 (unsealed portion) (Yamamoto testimony); Trial Tr., Day 2 at 73:9-78:1 (sealed portion) (Yamamoto testimony).

Maxell also has a joint research and development agreement with Texas A&M University (Texarkana). *See* Trial Tr., Day 1 at 267:16-17 (Yamamoto testimony). And Maxell has a research and development facility in the U.S., in Marshall, Texas. *Id.* at 268:19-269:3.

Maxell's patent licensing revenues support its ongoing research and development activity. If Samsung is permitted to engage in post-verdict infringement with impunity, Maxell will be deprived of licensing revenues from Samsung. In addition, other potential licensees will have no incentive to license Maxell's patents while Samsung continues to litigate this case (all the way to up to a potential Federal Circuit appeal). *See Commonwealth*, 492 F. Supp. 2d at 603. Maxell thus will be deprived of licensing revenue that otherwise would support its research and development. Maxell therefore will suffer very substantial injury in the absence of a permanent injunction.

### 2.    The injury to Maxell would be irreparable.

Samsung may suggest that Maxell cannot be harmed because it does not compete with Samsung. Judge Davis addressed and rejected this exact argument in *Commonwealth*, finding that the plaintiff in that case, CSIRO, suffered irreparable harm even though it did not compete with the defendant. *See* 492 F. Supp. 2d at 603-605. Citing *eBay*, Judge Davis explained how CSIRO suffered irreparable harm:

> "[S]ome patent holders, such as university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their work to market themselves. Such patent holders may be able to satisfy the traditional four-factor test, and we see no basis for categorically denying them the opportunity to do so."

> 126 S.Ct. at 1840. The majority opinion in *eBay* rejected the conclusion that ''a 'plaintiff's willingness to license its patents' and 'its lack of commercial activity in practicing the patents' would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue.'' *Id.* (internal citations omitted).

*Commonwealth*, 492 F. Supp. 2d at 603-604 (*citing eBay*); *see also* US SOI at 6.

Judge Davis further explained that "CSIRO is a research institution and relies heavily on the ability to license its intellectual property to finance its research and development. The revenue from licensing its intellectual property is used to fund further research and development for frontier projects." *Commonwealth*, 492 F. Supp. 2d at 604. Here, Maxell is identically situated—Maxell also uses licensing revenue to fund research and development opportunities.

Judge Davis then explained that beyond financial harm, "the harm of lost opportunities is irreparable," noting that "[t]hey cannot be regained with future money because the opportunity that was lost already belongs to someone else" and that "[h]aving its patents challenged via the courts not only impugns CSIRO's reputation as a leading scientific research entity but forces it to divert millions of dollars away from research and into litigation costs." *Id.* This is exact the situation Maxell faces when entities refuse to license its patents—it is forced to divert resources to litigation that would otherwise be spent on research and development.

*Commonwealth* thus is on all fours with this case. Maxell suffered irreparable harm.

   3.    *The US SOI further supports a finding that Maxell will suffer irreparable harm.*

The United States' SOI confirms that Maxell will suffer irreparable harm. The SOI explains that the difficulty of valuing a patent and calculating patent damages supports a determination that

a non-practicing entity suffers irreparable harm when its patents are infringed.[4] That is the precise situation that Maxell faces in this case.

The US SOI first points to Chief Justice Roberts's concurrence in *eBay* as follows:

"[A]t least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." *Id.* at 395 (Roberts, C.J. concurring). This "long tradition of equity practice is not surprising given the difficulty of protecting the right to exclude through monetary remedies that allow an infringer to use an invention against the patentee's wishes"—*a difficulty that suggests irreparable harm. Id.* (quotation marks omitted).

US SOI at 6 (citing *eBay*, 547 U.S. at 395) (emphasis added).

The US SOI then discusses Federal Circuit authority supporting its conclusion that "'[d]ifficulty in estimating monetary damages is evidence' of irreparable harm, i.e., 'that remedies at law are inadequate.'" US SOI at 7-8 (citing *i4i Ltd. P'ship*, 598 F.3d at 862 (citation omitted)). The US SOI further explains that "[i]rreparable harm is common in patent infringement cases because patents are hard to value and damages are difficult to calculate—as shown, for instance, by the frequent wide gap between a plaintiff's reasonable royalty calculation and a defendant's reasonable royalty calculation, even when both parties' damages experts survive Daubert challenges." *Id.* at 7; *see id.* at 9 ("Even when the patentee desires to license its patent to the defendant, a court-imposed reasonable royalty lessens the patentee's ability to control the scope and terms of its license."), *id.* at 9-11 (collecting cases regarding the "large number of reversals" of damages determinations as evidence of irreparable harm).

---

[4] The US SOI notes that "The ability to show irreparable harm is likely lower for a plaintiff seeking a preliminary injunction in a patent-infringement case, as compared to a permanent injunction, because with the former there has been no final determination that the patent has been infringed." US SOI at 13 n. 5. That is not the case here—the jury found Samsung willfully infringed each of the three asserted patents.

PUBLIC VERSION

The record here demonstrates the exact dynamic that the United States described in its SOI. After reviewing the same licenses, Maxell's damages expert stated that Samsung owed Maxell $129.6 million and Samsung's damages expert asserted a range of $2.2-3.5 million. In other words, there was a "wide gap between a plaintiff's reasonable royalty calculation and a defendant's reasonable royalty calculation." The gap demonstrates the difficulty in determining the value of the three patents in suit, which in turn supports a finding that Maxell suffered irreparable harm.[5]

Further underscoring the difficulty of calculating patent damages, as explained in the US SOI, is this Court's decision to strike Mr. Jarosz's incremental benefit approach prior to trial. *See* Dkt. 285 at 5-12. In doing so, the Court significantly reduced Maxell's damages theory presented to the jury—which highlights the difficultly in assessing the "true" benefit that Samsung received from infringing Maxell's patents.

The United States' SOI also provides an additional reason why Maxell suffered irreparable harm: "The possibility of an injunction also helps prevent potential licensees from viewing infringement as economically efficient, which would further erode the patent's value and the patentee's control over it." US SOI at 14.

That is just what happened here. As set forth in detail, Sections II(B) and II(C)(2) and (6)-(7), Samsung did nothing to analyze Maxell's patents, employed delay tactics related to requesting claim charts, and has not made any modifications to the accused products to avoid infringement to date—and on into the future.

---

[5] "The Federal Circuit has also held that '[e]ven without practicing the claimed invention, the patentee can suffer irreparable injury.'" US SOI at 12 (citing *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 702 F.3d 1351, 1363 (Fed. Cir. 2012)); *see id.* at 13 (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1338 (Fed. Cir. 2012) for the proposition that a lack of direct competition does not preclude a finding of irreparable harm). It is therefore crystal clear that Maxell will be harmed by Samsung's continuing infringement.

In sum, Maxell has suffered and will continue to suffer irreparable harm under *eBay* factor one.

### B.    Maxell Has No Adequate Remedy At Law.

As to the second *eBay* factor, Maxell has no adequate remedy at law. If the Court does not enter a permanent injunction, the Court will in effect force a compulsory license upon Maxell. *See Commonwealth*, 492 F.Supp.2d at 605. As Judge Davis explained in *Commonwealth*, that license is inadequate: "[a] compulsory license would not contain the negotiated business terms typically used by patent holders to control their inventions[, Maxell] has a right to control its licensing program and to choose to whom to license and on what terms[, and] the price of a compulsory license established through a trial on damages would be inadequate since [Maxell's] past damages are limited compared to its ongoing damages." *Id.*[6]

In finding that CSIRO established that it did not have an adequate remedy at law, Judge Davis held that:

> A compulsory license will not adequately compensate CSIRO for Buffalo's continued intentional infringement. The royalty payment would be extrapolated from a determination of Buffalo's past sales, which may not adequately reflect the worth of the patent today to Buffalo. Further, such a royalty payment does not necessarily include other non-monetary license terms that are as important as monetary terms to a licensor such as CSIRO. Monetary damages are not adequate to compensate CSIRO for its damages, which are not merely financial.

*Id.* at 606.

Maxell is in the same boat as CSIRO. Mr. Yamamoto and Mr. Jarosz testified regarding a host of non-monetary considerations embodied in Maxell's licensees that provide significant

---

[6] The US SOI is also consistent with Judge Davis's findings in *Commonwealth* that denying an injunction is an effective grant of a compulsory license. *See* US SOI at 13 ("[A]dopt[ing] a broader rule—that licensing is effectively dispositive of the right to exclude infringers—would contradict *eBay*, 547 U.S. at 393-94. And it would risk creating a compulsory licensing scheme of the sort rejected by Congress. *See Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 215 & n.21 (1980) (rejecting argument that would effectively create compulsory licensing scheme)").

PUBLIC VERSION

benefits to Maxell. *See* Trial Tr., Day 1 at 273:20-275:1 (unsealed portion) (Yamamoto testimony); Trial Tr., Day  2 at 62:5-63:24, 64:23-72:8, 72:25-78:1 (sealed portion) (Yamamoto testimony); Trial Tr., Day 4 at 21:8-22:5, 25:21-32:7, 33:18-39:4 (sealed portion) (Jarosz testimony). Samsung's willful infringement, like Buffalo's in *Commonwealth*, cannot be adequately addressed through the jury's damages award alone.

As such, Maxell has no adequate remedy at law under *eBay* factor two.

### C.    The Balance of Hardships Tips In Maxell's Favor.

The balance of hardships favors Maxell because the harm from Samsung's continued willful infringement outweighs the harm that an injunction would cause—which is simply preventing Samsung from engaging in continuing infringement by selling its infringing products. "[T]he harm that [Samsung] faces is purely monetary, whereas the harm to [Maxell] faces if no injunction issues has far reaching effects." *Commonwealth*, 492 F.Supp.2d at 606.

If Samsung were to cease selling the infringing products in the United States, Samsung's entire business operations would not cease. Indeed, Mr. Kim testified that Samsung has about 20,000 people working in Texas with about 6,000 working on mobile devices. *See* Trial Tr., Day 4 at 817:2-6 (unsealed portion). Mr. Kim further explained that Samsung sells "a variety of products including foldable phones" and "QLED TVs, refrigerators, and washers"—*i.e.*, a substantial number of products other than the accused products. *See id.* at 817:8-12. And, of course, Samsung could sell the infringing products outside the United States.

On the other hand, as discussed in Sections IV(A)-(B), "not only [would Maxell] be injured financially, but that financial injury will directly and negatively impact [Maxell's] research and development efforts and its ability to bring new technologies into fruition." *Commonwealth*, 492 F.Supp.2d at 606; *see id.* ("The Court has already discussed how a compulsory license would harm CSIRO."). *eBay* factor three thus favors a permanent injunction.

27

PUBLIC VERSION

### D.     The Public Interest Be Furthered By a Permanent Injunction.

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i Ltd. P'ship*, 598 F.3d at 863. "In general, public policy favors the enforcement of patent rights" because "[t]he public maintains an interest in protecting the rights of patent holders as well as enforcing adequate remedies for patent infringement." *Commonwealth*, 492 F.Supp.2d at 607. Accordingly, "[i]n order to enforce a patentee's fundamental property right, courts have consistently allowed injunctive relief to patent owners whose patents have been infringed." *Id.*

Although there are circumstances where an injunction would be contrary to the public interest (*e.g.*, where an injunction would implicate "health and safety concerns"), none of those circumstances is present here. *See id.* Samsung's infringing mobile devices (smartphones and tablets) are not "essential for the public health or public welfare" (*see id.*), particularly when there are licensed smartphones and tablets that are readily available (*e.g.*, from ███ Further, entities that conduct research "ha[ve] produced enormous benefits to society in the form of new products and processes" and, thus, merits strong patent protection. *See id.* Maxell's research and development is no different and merits the same protection.

The public interest (*eBay* factor four) thus favors granting Maxell a permanent injunction.

*         *         *

Accordingly, the Court should grant Maxell's motion for a permanent injunction as it has demonstrated that each of the four *eBay* factors weigh in its favor.

## V.     CONCLUSION

For the reasons set forth above, Maxell requests that the Court grant its post-trial motions.

PUBLIC VERSION

Dated: July 14, 2025

By: */s/ Jamie B. Beaber*

Geoffrey Culbertson
Kelly Tidwell
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Blvd. (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080
(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

Jamie B. Beaber
Kfir B. Levy
Alan Grimaldi
James A. Fussell, III
Saqib J. Siddiqui
Bryan C. Nese
Michael L. Lindinger
Tiffany A. Miller
Alison T. Gelsleichter
Tariq Javed
Seth W. Bruneel
Courtney Krawice
Séké G. Godo
Sora Ko
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
klevy@mayerbrown.com
agrimaldi@mayerbrown.com
jfussell@mayerbrown.com
tmiller@mayerbrown.com
ssiddqui@mayerbrown.com
bnese@mayerbrown.com
mlindinger@mayerbrown.com
agelsleichter@mayerbrown.com
tjaved@mayerbrown.com
sbruneel@mayerbrown.com
ckrawice@mayerbrown.com
sgodo@mayerbrown.com
sko@mayerbrown.com

PUBLIC VERSION

Robert G. Pluta
Amanda Streff Bonner
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com
asbonner@mayerbrown.com

*Counsel for Plaintiff Maxell, Ltd.*

30

PUBLIC VERSION

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of July, 2025, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

*/s/ Jamie B. Beaber*
Jamie B. Beaber

## **CERTIFICATE OF CONFERENCE**

I hereby certify that Plaintiff Maxell, Ltd. has complied with the requirements of Local Rule CV-7(h) governing this case. Specifically, the parties held a telephonic meet and confer on July 11, 2025 regarding the relief requested in this Motion. Counsel for Defendants indicated that Defendants oppose this Motion.

*/s/ Jamie B. Beaber*
Jamie B. Beaber